Filed 5/16/22  P. v. Ignacio CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERIC IGNACIO,<br><br>Defendant and Appellant. | B311152<br><br>(Los Angeles County<br>Super. Ct. No. KA040038) |

APPEAL from an order of the Superior Court of Los Angeles County, Juan C. Dominguez, Judge.  Reversed and remanded with directions.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Mado, and Stephanie A. Miyoshi, Deputy Attorneys General for Plaintiff and Respondent.

———————————————

Eric Ignacio appeals from an order denying his petition to vacate his second degree murder conviction and for resentencing under Penal Code section 1170.95.[1] Ignacio argues substantial evidence does not support the trial court's conclusion he is guilty of second degree murder as a direct aider and abettor under amended sections 188 and 189 and, as a consequence, we should reverse the order denying his petition and direct the trial court to grant the petition and to resentence him as required by section 1170.95, subdivision (d)(1). In the alternative, he contends the case should be remanded for a new evidentiary hearing because the trial court erred when it relied on the factual summary and conclusions from this court's February 2000 opinion in his direct appeal to conclude he was ineligible for resentencing.

Although the evidence presented at the evidentiary hearing was sufficient to support the court's order, reversal is required because the recent legislative amendments to section 1170.95 no longer permit a trial court to rely on an appellate opinion's factual summaries and conclusions to determine a petitioner's eligibility for resentencing. Here the trial court relied almost exclusively on this court's prior opinion to deny Ignacio's section 1170.95 petition, and it is reasonably probable that a result more favorable to Ignacio would have been reached in the absence of that error. Accordingly, we reverse the order denying Ignacio's petition and remand for a new evidentiary hearing.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

A.    *The Murder of Anthony Boissiere*

In 1997 Ignacio and his codefendants Paul Ortiz, Gabriel Centeno and Victor Blas were Azusa 13 criminal street gang members. In early July 1997 another member of the Azusa 13 gang, Nick Jaramillo, was involved in a fight with Anthony Boissiere.[3] A short time later, while Boissiere was walking with a friend, Moses Alcala, Jaramillo and Ignacio approached them in a car; Jaramillo got out of the car and chased Boissiere but did not catch him.

Two weeks later, Boissiere, Alcala, and Alcala's girlfriend, Angie Ramirez, attended a party at a private residence. Ignacio and his co-defendants Ortiz, Centeno and Blas also went to the party, arriving in Blas's Buick Regal.

During the party Boissiere and Blas got into a fistfight in the front yard. At some point Ignacio, Centeno and Ortiz joined Blas, kicking and punching Boissiere. Ignacio and one of his co-defendants, either Ortiz or Centeno, briefly went to the Buick Regal and returned to the fight. Moments later gunshots were fired. Boissiere was shot three times and fell to the ground. Ignacio, Centeno, Ortiz and Blas immediately fled in Blas's car. Boissiere died from multiple gunshot wounds. His body also had numerous cuts, scrapes and bruises from the fight.

---

[2]    The facts described here are from the evidence presented at the section 1170.95 evidentiary hearing and this court's unpublished opinion in Ignacio's direct appeal of his convictions (No. B125562.).

[3]    There is no evidence in the record that Boissiere was a member of a gang.

During the police investigation Acala and Ramirez identified Ignacio, Oritz, Centeno and Blas as Boissiere's attackers. Acala also identified Ignacio as one of the two people who briefly left the fight, went to the Buick Regal, and returned before Boissiere was shot. No one identified who possessed the gun or who fired the shots that killed Boissiere.

In May 1998 Ignacio, Centeno, Ortiz and Blas were charged with murder (§ 187). The charges included the allegation that a principal was armed with a firearm (§ 12022, subd. (a)(1)) and that the murder was committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)). Ortiz was also charged with dissuading a witness (§ 136.1, subd. (c)(1)).[4]

All the defendants were tried together. On the murder charge the prosecution proceeded on the theory that a principal armed with a gun committed the murder. The prosecution argued each of the defendants was liable for Boissiere's murder under the alternative theories that each defendant either directly aided and abetted the principal in committing the murder or that each defendant aided and abetted in committing the assault and the murder was the natural and probable consequence of that assault. The jury was instructed on each theory.

The jury convicted Ignacio[5] and each co-defendant of second degree murder (Pen. Code, § 187, subd. (a) (1)) with gang and firearm enhancement findings under sections 186.22, subdivision

---

[4]     It was alleged Ortiz attempted to dissuade Alcala from testifying at trial.

[5]     The jury's verdict does not disclose which of the two theories of aiding and abetting the jury relied upon in reaching its verdict.

4

(b) and 12022, subdivision (a)(1).[6]  The trial court sentenced Ignacio to an aggregate term of 15 years to life for the murder conviction plus a one-year firearm enhancement but did not impose an additional sentence for the gang allegation.

### B.    The Direct Appeal (B125562)

Ignacio and his co-defendants appealed.  They each raised various challenges to their convictions including a claim that there was insufficient evidence to support their convictions for murder under either of the prosecution's aider and abettor theories because there was no evidence that a specific defendant shot or intended to shoot Boissiere and there was no showing that any of the defendants had an intent to kill.

Ignacio individually argued there was insufficient evidence that he did anything to aid and abet the commission of the murder, shared the shooter's intent or was aware that one of his co-defendants had a gun and intended to shoot Boissiere.[7]  He asserted he was merely a bystander to the shooting and the prosecution's evidence (that he and another defendant went to the car during the fight and one of them retrieved a gun) was insubstantial, conflicting and incredible.  He further argued insufficient evidence existed to conclude the murder was a natural and probable consequence of the fight.

In February 2000 a different panel of this court resolved Ignacio and his co-defendants' appeals in a single opinion.  This court affirmed the murder convictions concluding sufficient

---

[6]    Ortiz also was convicted of dissuading a witness.

[7]    On August 9, 2021, this court granted Ignacio's motion to augment the record in this appeal with the reporter's and clerk's transcripts of the direct appeal B125562.

5

evidence supported the convictions under the natural and probable consequence doctrine.[8]  This court found Ignacio and his co-defendants participated in the beating of Boissiere stating it was "reasonably foreseeable this attack might kill him, even without the use of a gun[;]" "[a]ppellants did not have to know that one of their group had a gun or intended to shoot in order to be liable for aiding and abetting the killing[;]" and "it was reasonably foreseeable that this gang-motivated scuffle might escalate into a shooting."  Because this court held sufficient evidence supported the murder conviction under the natural and probable consequences theory of aiding and abetting, this court did not address whether sufficient evidence also supported the verdicts against Ignacio or his co-defendants under the direct aider and abettor theory of murder.

C.    *Ignacio's Section 1170.95 Petition*

On February 6, 2019, Ignacio filed a petition for resentencing under Penal Code section 1170.95, alleging he was prosecuted for and convicted of second degree murder under the natural and probable consequences doctrine and could not now be convicted of murder following Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437).  Ignacio filed a brief in support of the petition in which he argued he was not the actual killer, he did not have the specific intent to kill, and he was not a major participant who acted with reckless indifference to human life.  Instead, he was "simply involved in a fistfight with no intent to

---

[8]    On direct appeal this court reversed Ortiz's conviction for felony witness intimidation because the trial court failed to instruct the jury on the lesser included offense of misdemeanor dissuading a witness.

6

kill," and was therefore eligible for resentencing under section 1170.95.

The prosecution responded to the petition noting the trial court had instructed on direct aiding and abetting and the natural and probable consequences theory. The prosecution argued even though there was no evidence presented as to the identity of the shooter, Ignacio's guilt as a direct aider and abettor was shown by evidence that he went to the Buick Regal to "retrieve what could be nothing other than the murder weapon" that was used almost immediately after that to shoot Boissiere. The prosecution argued Ignacio was a major participant who acted with reckless indifference to human life because he and his co-defendants, who were all members of the Azusa 13 gang, went to a party and "ganged up" on Boissiere when co-defendant Blas appeared to be losing a fistfight with Boissiere. Ignacio and either Ortiz or Centeno then returned to Blas's car to retrieve a gun that was used to shoot Boissiere. The exhibits attached to the prosecution's reply included this court's unpublished opinion in the direct appeal and the reporter's transcript of the jury instructions from the trial.

The trial court[9] requested additional briefing on whether it could make a finding contradicting the factual summary and findings in this court's prior opinion. The prosecutor filed a brief arguing that because no new evidence had been presented the trial court should be limited to Ignacio's record of conviction, including the court of appeal's opinion in the direct appeal. The prosecutor maintained that because the currently assigned

_____

[9] The case was transferred to a different judge because the judge who tried the case two decades earlier was no longer available to rule on the petition.

7

superior court judge was not present for the trial testimony of the witnesses, the court was not in a position to reweigh the credibility of the trial witnesses and could not make findings contradicting the appellate opinion. Ignacio also filed a supplemental brief and argued section 1170.95 did not require the trial court to follow this court's previous factual findings.

The trial court concluded that because the jury was instructed on both the natural and probable consequences theory of murder and the direct aider and abettor theory, and because the record did not disclose which theory the jury relied upon in reaching its verdict, the court could not summarily deny the petition. The trial court found Ignacio had shown a prima facie case for relief, appointed counsel, and issued an order to show cause.

D.      *Evidentiary Hearing on the Section 1170.95 Petition*
On February 10, 2021, the trial court conducted the evidentiary hearing on the petition. In support of its opposition, the prosecutor presented this court's opinion in the direct appeal and also sought to offer witness testimony from a retired Los Angeles County Sheriff's Department Detective, Tommy Harris, who worked on the Boissiere murder investigation. The prosecutor made an offer of proof that Detective Harris would testify regarding the statement Acala gave to Harris's partner, Detective Jerry Kaona, hours after the shooting. In his statement to Kaona, Acala identified Ignacio as one of the two

8

people who left the fight to go to the Buick Regal before shots were fired.[10]

Ignacio's counsel objected to Harris's testimony arguing it was inadmissible hearsay.  The prosecutor argued the statement was admissible under Evidence Code Section 1238 as a prior identification.  After reviewing this court's opinion's statement of facts, the court agreed with the prosecution, concluding that the Evidence Code section 1238 hearsay exception applied.

### 1.    *Detective Harris's Testimony*

Detective Harris testified Alcala identified Ignacio as one of the people who went to the Buick Regal during the fight. According to Harris, Alcala stated "two people ran to the . . . Regal and then obtained something and returned back and helped his other homeboys in the fight against [Boissiere] . . . and then [Alcala] heard three or four gunshots."  Alcala told police he could identify Ignacio because he had seen Ignacio "numerous times."  Detective Harris further testified Alcala stated that two weeks before the murder Alcala and Boissiere had been chased by Ignacio and another gang member.

### 2.    *Paul Ortiz's Testimony*

At the section 1170.95 hearing Ignacio presented testimony from his co-defendant, Paul Ortiz, who admitted he was the

---

[10]    The prosecutor also sought to offer Detective Harris's testimony concerning the statement Ramirez gave to the police that she observed two people go to the Buick Regal before the shooting.  The court denied the prosecutor's request to allow Harris to relay Ramirez's statement because the prosecutor did not demonstrate Ramirez had identified the people who went to the car.

9

shooter.[11] Ortiz told the court he obtained the gun from another Azusa 13 gang member before going to the party. According to Ortiz, he, Ignacio and the other co-defendants drove to the party in Blas's Buick Regal. Ortiz claimed he did not leave the gun in the car but instead put it in his pocket, went into the party and headed to the backyard.

Ortiz estimated 300 people attended the party. While he was in the backyard, he heard someone yell something disrespectful and he punched that person. Ortiz said several other small fights also broke out in the backyard. One skirmish involved an individual Ortiz described as "loud talking." Ortiz took out his weapon to respond. When Centeno told Ortiz the individual was a "gang member's cousin," Ortiz put the gun away.

Ortiz testified that at some point he heard someone say, "Just call the cops," so he decided he should leave the party. He went to Blas's car and assumed his co-defendants would soon join him. No one immediately returned to the Buick. Ortiz sat in the car with the door open so that if the police arrived he could flee quickly. Eventually Ignacio returned to the car, and the two of them headed back to the party to find the others. As they were walking across the front yard, they saw Blas involved in a fight with Boissiere. Ortiz said he ran up to the fight, but Ignacio stayed standing somewhere behind and did not get involved. Ortiz grabbed Boissiere by the arm and shot him. Ortiz explained the shooting was an unplanned and impulsive reaction to seeing a fellow gang member involved in a fight.

---

[11]     Ortiz did not testify during the 1998 trial.

10

Ortiz testified he did not see anyone other than Blas fighting with Boissiere. Ortiz denied Ignacio gave him the gun, and claimed he never told Ignacio he had a gun the night of the party.

Ortiz admitted he tried to "fix" the situation, so that neither he nor his co-defendants would be convicted of the murder, by attempting to intimidate Alcala so he would not testify in the case. He also conceded that, during the trial, his attorney called two witnesses who provided him with an alibi for the crimes. Ortiz admitted he threatened the alibi witnesses to get them to testify on his behalf. Ortiz testified that he lied to the detectives when he claimed he was not present during the shooting because he was engaged in "criminal thinking," which meant he "manipulated," "intimidated," and "did whatever [he] could to avoid responsibility."[12]

Ortiz stated that during his July 2019 parole board hearing he admitted he shot Boissiere. He testified he was under the influence of methamphetamine and alcohol and had not slept for weeks prior to murdering Boissiere. He finally admitted he shot Boissiere because he was "trying to take responsibility" for what

---

[12] Ortiz testified he engaged in criminal activity while in prison. In 2015 he was caught with contraband, including a cell phone. He also remained active in gangs; he obtained approximately nine gang tattoos while incarcerated, including the word "Azusa" that he had tattooed under his nose to help a fellow gang member in another case. He thought he could "muddy up" that case because a witness identified the shooter as having a tattoo on his upper lip. Ortiz stated he left the gang in 2019. He went through the process of being declassified as a gang member in prison and had "taken responsibility for all of the bad things that he's done in his life."

11

he had done and he wanted Boissiere's family to have closure. Ortiz acknowledged it had taken him almost 23 years to admit the crime because he was "in denial" and did not want to take responsibility. He conceded that to be released on parole he needed to take responsibility for his actions. Ortiz said lying at Ignacio's section 1170.95 hearing would not help him gain parole.

### 3. *The Court's Order Denying the Petition*

At the end of the section 1170.95 hearing the court stated that during an evidentiary hearing it was required to "act as an independent factfinder and determine whether the evidence establishes that [appellant] would be guilty of murder under the amended sections 188 and 189, and thus be ineligible for resentencing under 1170.95(d)(3)." The court said it had reviewed the parties' briefs and this court's opinion on direct appeal stating it "read the facts and the trial proceedings as summarized in the court of appeal opinion that was filed in this case;" the trial court then recounted the facts as summarized in this court's opinion. The trial court noted the issue was not "who actually pulled the trigger." Instead the issue involved was "what did [appellant] know at the time that the fatal shots were fired?" The superior court found Ortiz was "truthful in part of his testimony" but was "absolutely untruthful in other parts of his testimony." The court stated certain parts of Ortiz's testimony did not make "any sense," particularly in light of Ortiz's "admitted responsibility that he had to his fellow gang members" and yet he allowed "three other fellow gang members" "to languish in prison for 23 years" when those gang members were supposedly unaware that Ortiz was armed with a weapon and might use it.

12

The trial court emphasized the importance of this court's prior opinion to its decision-making process, quoting a portion of the opinion's legal analysis: "'"In this case, substantial evidence showed that each appellant participated in beating Boissiere with fists and feet. It was reasonably foreseeable that this attack might kill him even without the use of a gun. Appellants did not have to know that one of the group had a gun or intended to shoot in order to be liable for aiding and abetting the killing"'" From this quoted portion of the appellate opinion, the trial court concluded this court found Ignacio "would be liable even without the use of a gun for the intention to kill. Apparently, the beating of the victim was substantially severe." The "overwhelming evidence" was Ignacio and his three co-defendants were fighting with Boissiere. The trial court noted that, although Ortiz testified he had the gun during the party, the testimony did not seem "entirely truthful" because "it's much worse to be found with a gun on you than stashed away in a car." The court also rejected Ortiz's claim that he carried the gun because it conflicted with the version of facts in the appellate opinion that Ignacio and another co-defendant returned to the car. The court concluded, "there was a reason why they returned to the car, and immediately upon returning to the fight, the shots were fired." The court denied the petition finding "the prosecution has proven each element of . . . second-degree murder beyond a reasonable doubt and that the [appellant] is ineligible to have his sentence recalled and to be resentenced."

Two weeks after the evidentiary hearing, on February 25, 2021, the court re-called the case. The trial court explained that, because the case involved an emerging area of the law, it wanted to restate its reasons for its ruling so a reviewing court "does not

13

have to guess what was on [its] mind." The court then read a written statement into the record in which it clarified it believed Ortiz when he testified he was the actual shooter. However, "[w]ith respect to his other testimony, the court did not find him credible." The trial court stated, even though Ortiz claimed he was under the influence of methamphetamine and had not slept for weeks at the time of the murder, it was "a little bit hard to believe" that "23 years later" Ortiz remembered "with clarity" that Ignacio "was not present when the shots were fired." The court observed Ortiz's testimony was "inconsistent" with the "trial testimony"[13] that Ignacio and his three co-defendants assaulted Boissiere, and two people (Ignacio and Ortiz) went to the car, returned to the fight and "immediately several shots were heard." The court stated the primary issue was whether Ignacio aided and abetted Ortiz, "knowing that he was going to kill the decedent," that is, whether Ignacio "act[ed] on his own malice aforethought, either express or implied." The court found "[t]he clear evidence here" was Ignacio participated in beating Boissiere and "during the course of the assault," he and Ortiz went to the car, returned to the fight and Ortiz shot Boissiere.

---

[13]   The trial court's reference to "trial testimony" denotes this court's description of the evidence contained in the fact summary in the appellate opinion, rather than the actual trial testimony transcribed in the reporter's transcript. The trial court's recitation of facts tracks this court's statement of facts in the appellate opinion. Although the prosecutor referred to the evidence presented at trial during his argument at the section 1170.95 evidentiary hearing,  there is no evidence in the record before us that the prosecutor submitted the trial transcripts during the evidentiary hearing or that the trial court had access to or otherwise relied on the trial transcripts.

14

"The reasonable conclusion that can be deduced from the circumstantial evidence is that [Ignacio] knew that Ortiz retrieved the gun, that he walked back with him to shoot the decedent with the intent that he be killed." The trial court concluded Ignacio knew Ortiz was going to shoot Boissiere, "that he intended to aid and abet Mr. Ortiz in the shooting, and that his words or conduct did, in fact, aid and abet Mr. Ortiz in the perpetration of the crime." The trial court reiterated the factual conclusion in the appellate opinion that due to the "nature of and the severity of the assault each participant manifested an intent to kill decedent even before the gun was produced." The court then restated it was denying Ignacio's petition because "[t]he prosecution has proved beyond a reasonable doubt that [appellant] would be convicted of first or second-degree murder as a principal under an aider and abettor theory notwithstanding the change in the law."

The court then allowed Ignacio's attorney to make an additional statement on the record. Counsel argued the standard of proof was beyond a reasonable doubt and noted Ortiz testified Ignacio did not know Ortiz had a gun or that a shooting would occur. The court replied it had acted as a trier of fact and found "beyond a reasonable doubt that the prosecution has proved, not that he's even eligible for relief, but that he actually committed murder, either as an aider and abettor, or what have you under another theory that is not affected by the law."

Ignacio timely appealed the order denying his petition.

## DISCUSSION

On appeal Ignacio argues: (1) the trial court applied the wrong legal standard when it acted as an independent factfinder instead of assessing whether the jury rested its verdict on a still-

15

valid theory of murder; (2) sufficient evidence did not support the court's conclusion he was ineligible for resentencing; (3) the court erred in admitting the hearsay testimony of Detective Harris; (4) the court erred in relying on the factual summary from this court's opinion in the direct appeal because the recent amendments[14] to section 1170.95 precluded the trial court from using an appellate opinion factual summary during a section 1170.95 evidentiary hearing; (5) the error in using the appellate opinion was prejudicial; and (6) cumulative error required reversal.

## A.    *General Applicable Legal Principles*

A person may be liable for a crime as a direct perpetrator or as an aider and abettor.  (§ 31.)  An aider and abettor may be liable for crimes intentionally aided and abetted (target offenses) or for any crimes that were not intended but were reasonably foreseeable (nontarget offenses).  (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1462-1463.)  Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses is known as the "natural

---

[14]    In October of 2021, after the parties filed their briefs in this appeal, the Legislature amended section 1170.95 in a number of respects including revising subsection (d), which governs the presentation and consideration of evidence at a section 1170.95 evidentiary hearing. (Sen. Bill No. 775, 2021, ch. 551, §§ 1, subd. (c), 2, subd. (d)(3); § 1170.95, subd. (d)(3).)  Because the amendments were set to become effective on January 1, 2022, while this appeal was pending, at the invitation of this court both parties filed supplemental briefs addressing the effect of the amendments on this appeal.

16

and probable consequences doctrine." (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1055.)

SB 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine for murder to ensure that a person's sentence is commensurate with their individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-844.) Before the passage of SB 1437, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.) SB 1437 amended section 188 to provide that malice may not be imputed to a person based solely on their participation in a crime; instead to convict a defendant of murder a jury must find the defendant acted with malice. (*People v. Eynon* (2021) 68 Cal.App.5th 967, 973-974.)

SB 1437 also added section 1170.95, which created a mechanism for defendants convicted under the felony- murder or the natural and probable consequences doctrine to petition the sentencing court for vacation of their murder convictions and resentencing. (*People v. Allison* (2020) 55 Cal.App.5th 449, 455, 456.) When a person files a petition in compliance with section 1170.95, the trial court "assess[es] whether the petitioner has made 'a prima facie showing' for relief."[15] (§ 1170.95, subd. (c).)

---

[15] When making this determination the trial court does not evaluate the credibility of the petition's assertions and assumes

17

If the trial court determines the petitioner has made a prima facie showing for relief, "the trial court issues an order to show cause, and then must hold a[n evidentiary] hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) A defendant is eligible for relief under section 1170.95 if the defendant could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 made by SB 1437. (See § 1170.95, subd. (a)(3).)

As originally enacted in 2019 section 1170.95 provided, "[a]t the [evidentiary] hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).)" (*Lewis, supra,* 11 Cal.5th at p. 960.) Prior to January 1, 2022, to meet their respective burdens, "[t]he prosecutor and the petitioner [could] rely on the record of conviction or offer new or additional evidence." (See § 1170.95, subd. (d)(3).)

---

all facts stated in the section 1170.95 petition are true. If the record contains facts that refute the allegations in the petition, the court is justified in making a credibility determination adverse to the petitioner. (See *People v. Lewis* (2021) 11 Cal.5th 952, 970-972 (*Lewis*).) The court's authority to make determinations without conducting an evidentiary hearing is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than fact finding that involves the court weighing evidence or exercising its discretion. (*Ibid.*)

18

Senate Bill No. 775 (SB 775), passed during the 2021 regular legislative session and effective as of January 1, 2022,[16] amended section 1170.95 in various respects.[17] SB 775 clarified that the burden of proof at a section 1170.95 resentencing hearing is beyond a reasonable doubt and a trial court's finding that there is substantial evidence to support a conviction is insufficient to meet this burden. (Sen. Bill No. 775, 2021, ch. 551, §§ 1, subd. (c), 2, subd. (d)(3); § 1170.95, subd. (d)(3).) SB 775 also clarified the standards regarding the admissibility of evidence at the resentencing hearing. (Stats. 2021, ch. 551, § 2, subd. (d)(3); § 1170.95, subd. (d)(3).)

---

[16] See Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865 ["Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except when the statute is passed as an urgency measure and becomes effective sooner."].

[17] In addition to the amendments at issue here, SB 775 also amended section 1170.95 to apply to convictions for attempted murder under the natural and probable consequences doctrine and manslaughter. (See Sen. Bill No. 775, 2021, ch. 551, § 1, subd. (a) ["persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural and probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1 [Legislature's findings and declarations]); § 1170.95, subd. (a).)

*B.    Analysis*

    *1.    SB 775 Applies to Ignacio's Petition*

Before reaching the merits of Ignacio's claims we briefly address the retroactive application of SB 775's amendments to section 1170.95.

Other appellate courts in this district and elsewhere have held that the new amendments to 1170.95 apply retroactively to appeals from the denial of petitions not yet final as of January 1, 2022. (*People v. Porter* (2022) 73 Cal.App.5th 644, 652 [appellate court found section 1170.95, as amended effective January 1, 2022, applied to the defendant's petition filed under former section 1170.95, because "the trial court's order denying the petition is not yet final and Senate Bill No. 775 has already taken effect"]; accord, *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006-1007 [holding that the provisions of SB 775 retroactively applied to a petitioner's appeal of the order denying the 1170.95 petition for the sentencing of a conviction for attempted murder would not yet be final as of the effective date of the SB 775 amendments].)  We agree[18] and conclude Ignacio is entitled to the

---

[18]    In other cases with a similar procedural posture where, like here, the appeal of the order denying the petition was not final as of the effective date of the amendments to section 1170.95, the Attorney General has conceded the revisions in SB 775 retroactively apply.  (See, e.g., *Porter, supra,* 73 Cal.App.5th at p. 652; see also *People v. Harden* (2022) 76 Cal.App.5th 262, 272, fn. 6 [noting the Attorney General did not oppose the appellant's contention that she is eligible to benefit from this remedial legislation because Harden's appeal was not final by January 1, 2022].)  Here, however, in the respondent's supplemental brief, in a single sentence of text and a related footnote, the Attorney General posits that the question of retroactivity is "unclear."  In

benefit of section 1170.95, as amended effective January 1, 2022. (See *People v. Vieira* (2005) 35 Cal.4th 264, 305 ["A defendant generally is entitled to benefit from amendments that become effective while his case is on appeal."].)

### 2. *The Trial Court Applied the Proper Legal Standard of Proof in Evaluating the Petition*

In his opening brief, Ignacio argues the trial court applied the wrong standard of proof by making its own assessment regarding whether the new elements of murder were proven beyond a reasonable doubt. He argues the correct standard is not whether the court believes there is proof beyond a reasonable doubt of the petitioner's guilt under a still-viable theory of murder. Instead, the question is whether the jury actually rested its verdict on a still-viable theory of murder.

Before the enactment of SB 775, section 1170.95, subdivision (d)(3), provided, in relevant part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for relief." There was a split of authority among the appellate courts over what the prosecution had to prove beyond a reasonable doubt. (Compare, e.g., *People v. Duke* (2020) 55 Cal.App.5th 113, 272, review granted Jan. 13, 2021, S265309 and cause transferred Nov. 23, 2021 [holding that in determining whether the prosecution has met its burden of proof at a section 1170.95 evidentiary hearing, the trial court employs a standard "essentially identical to the standard of substantial evidence, in which the reviewing

---

view of *Porter* and *Harden*, the Attorney General's irresolute opposition to retroactivity is unconvincing.

21

court asks "'"whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt . . . ."'"]; with, e.g., *People v. Lopez* (2020) 56 Cal.App.5th 936, 942, review granted Feb. 10, 2021, S265974, and cause transferred Dec. 22, 2021 [holding that the trial court acts as an independent fact-finder to determine whether the prosecutor has proved each element of the murder conviction beyond a reasonable doubt under the new law].)

The Legislature resolved that issue; as amended by SB 775, subdivision (d)(3), now provides: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019 . . . . A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) As made clear by the amendment, to prevail at the hearing on the merits the prosecution must convince the court, beyond a reasonable doubt, that the petitioner is guilty of the crime of conviction.

Here the parties do not dispute the trial court applied the "independent fact-finder" standard, which the Legislature endorsed in the revision to section 1170.95. The court correctly acknowledged on the record it was acting as an independent fact-finder to determine whether the prosecution had proven beyond a reasonable doubt whether Ignacio is guilty of murder under the

22

law as of January 1, 2019.[19]  Ignacio failed to demonstrate the court applied the wrong legal standard.

### 3. *Substantial Evidence Supported the Trial Court's Finding That Ignacio Is Guilty of Second Degree Murder as an Aider And Abettor Under California Law as Amended by SB 1437*

A person aids and abets the commission of a crime when, (1) with knowledge of the unlawful purpose of the perpetrator, (2) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (3) by act or advice, words or gestures, the person aids, promotes, encourages or instigates the commission of the crime.  (*People v. Gonzales* (2011) 52 Cal.4th 254, 295; *People v. Abelino* (2021) 62 Cal.App.5th 563, 578.)  Merely being present at the crime scene is not, by itself, aiding and abetting, but it can be one factor among others that supports a conviction as an aider and abettor.  (*In re Juan G.* (2003) 112 Cal.App.4th 1, 5 (*Juan G.*).)  "Among the factors which

---

[19]    At the conclusion of the evidentiary hearing on February 10, 2021, when it announced Ignacio was ineligible for relief under section 1170.95, the trial court stated it was required to "act as an independent factfinder."  The trial court's decision to recall the case two weeks later appears to have been motivated in part to clarify the legal standard it had applied.  The court acknowledged that the law on the legal standard was in "flux," and stated "[t]he definition of what the court has to find, there are a number of cases that said, and I think that's the appropriate standard, that the court has to find beyond a reasonable doubt that the prosecution has proved, not that he's even eligible for relief, but that he actually committed the murder, either as an aider and abettor, or . . . under another theory that is not affected by the law.  [¶]  And the judge is at this juncture the trier of fact."

23

may be considered in determining aiding and abetting are: presence at the crime scene, companionship, and conduct before and after the offense." (*Ibid*.)  In addition, the intent to aid and abet may form before or during the perpetrator's commission of the crime.  (*People v. Montoya* (1994) 7 Cal.4th 1027, 1039.)  Flight is yet another factor that is relevant in determining consciousness of guilt.  (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094-1095 (*Lynette*).)

On appeal from a denial of relief following an evidentiary hearing under section 1170.95, subdivision (d), this court reviews the trial court's factual findings for substantial evidence.  (*People v. Clements* (2022) 75 Cal.App.5th 276, 301 (*Clements*).)  We thus review the evidentiary hearing record in the light most favorable to the court's order to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value.  (*People v. Morales* (2020) 10 Cal.5th 76, 88.)  We presume the existence of every fact the court could reasonably deduce from the evidence that supports the court's order.  (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

Ignacio contends there was insufficient evidence to sustain the court's finding that he directly aided and abetted in Boissiere's murder.  He asserts there was no evidence showing he was aware of Ortiz's intent to shoot Boissiere, shared that intent or engaged in any conduct that aided, assisted, or encouraged the deadly act of shooting Boissiere.  At most, Ignacio argues, the evidence showed Ignacio accompanied Ortiz to get the firearm he used to shoot Boissiere.  According to Ignacio, the evidence showed he was bystander at the scene of the shooting.

Ignacio was not merely present at the scene of the murder.  Adequate evidence presented at the evidentiary hearing

24

including the testimony of Ortiz and Detective Harris, as well as the factual summary in this court's prior opinion, supported the trial court's determination that Ignacio acted as a direct aider and abettor in the murder of Boissiere. The evidence revealed that two weeks before the murder Boissiere fought with a member of Ignacio's gang, Nick Jaramillo, and that shortly after that, Ignacio and Jaramillo chased Boissiere. The evidence additionally showed that, on the night of the murder, Ignacio joined his co-defendants in brutally beating Boissiere with their fists and feet. While their co-defendants continued to beat Boissiere, Ignacio and Ortiz left the fight to obtain "something" from Blas's Buick Regal. Moments after they returned to the fight Ortiz fatally shot Boissiere, and Ignacio and his co-defendants immediately fled in Blas's car.

From this evidence, the court could reasonably infer Ignacio knew Ortiz had retrieved a gun[20] and Ignacio shared in Ortiz's intent to use that gun to kill Boissiere.[21] As the

---

[20] Ortiz fired the fatal shots almost immediately after he and Ignacio returned from the vehicle. Even though the item Ortiz retrieved from the car was not identified during trial, the court could reasonably conclude, from the totality of the testimony, that it was a firearm.

[21] Ortiz denied he and Ignacio went to the car to get a gun, claiming he had the gun in his pocket throughout the evening. Ortiz also testified none of his co-defendants were aware he was armed or would impulsively shoot Boissiere. The trial court did not find any of Ortiz's testimony on these points to be credible. The court's determination of credibility shall not be disturbed on appeal. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) The function of an appellate court is not to reweigh the evidence and substitute its judgment for that of the trial court. (*Ibid.*)

25

prosecutor observed, there was no reason for Ortiz and Ignacio to leave in the middle of the fight, go to the Buick Regal and then return to the fight unless they were obtaining the firearm from the car and planned to use it to shoot Boissiere. The evidence presented at the hearing supported the court's conclusion that Ignacio's conduct directly facilitated the murder. The fact that Ignacio accompanied Ortiz to the car in the middle of the fight supports the inference that Ignacio intended to help Ortiz look for the weapon. By escorting Ortiz to get the gun and returning to the fight, Ignacio engaged in a show of force and solidarity with Ortiz's deadly plan to shoot Boissiere. Finally, as soon as Ortiz killed Boissiere, Ignacio fled the scene with his co-defendants, further confirming that Ignacio aided and abetting Ortiz in the fatal shooting.

This case is analogous to *Juan G., supra,* 112 Cal.App.4th at pp. 3-4. In that case, the minor stood next to the perpetrator who pulled a knife from his waistband, pointed it at the victim from about one foot away, and demanded money. (*Id.* at p. 3.) The victim felt threatened by the minor, who stood close enough to touch him. (*Ibid.*) After the perpetrator took the victim's money, he and the minor fled the scene. (*Id.* at p. 4.) The minor claimed he did not know the perpetrator had a knife or was planning to rob the victim, and he ran away with the perpetrator because he was drunk and not thinking clearly. (*Ibid.*) The juvenile court concluded there was sufficient evidence to support the finding that the minor aided and abetted the robbery based on his presence at the crime scene, companionship and conduct before and after the offense, which indicated he knew of and shared the perpetrator's criminal intent. (*Ibid.*; see *People v. Burgos* (2022) 77 Cal.App.5th 550, 560 [concluding that it was

reasonable to infer defendant aided, promoted, and encouraged robbery because he was a "continuous constituent" of the group that committed the robbery—before, during, and after the offense]; *Lynette G., supra,* 54 Cal.App.3d at p. 1095 [finding the minor aided and abetted robbery when she was present at the crime, watched perpetrator rob victim, fled with the perpetrator and two others and remained with them until all were detained].)

One who intends to kill another "does not often declare his state of mind either before, at, or after the moment" of the killing. (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945.)  Absent such direct evidence, intent and the other elements of the offense must be derived from all the circumstances and evidence, including the defendant's actions and words.  (*Id.* at pp. 945-946.)  Whether the elements of direct aider and abettor second degree murder are met in the first instance is a question for the trier of fact. Although reasonable minds may differ as to the resolution of those issues, our sole function is to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  [Citations.]"  (*Id.* at p. 946.)  Based on the totality of the evidence presented at the hearing and considered by the trial court, we conclude there was sufficient evidence for the court to have made the finding that Ignacio was directly responsible as an aider and abettor in Boissiere's murder.

> 4. *At the Section 1170.95 Evidentiary Hearing, the Trial Court Erred in Relying on the Factual Summary from a Prior Appellate Opinion*

Even though we conclude that sufficient evidence supported the court's decision to deny Ignacio's petition, reversal

27

of the trial court's order is necessary in light of the amendments in SB 775, which revised section 1170.95.

During the evidentiary hearing on Ignacio's petition (in February 2021), section 1170.95, subdivision (d)(3), allowed "[t]he prosecutor and the petitioner [to] rely on the record of conviction or offer new or additional evidence to meet their respective burdens" at the evidentiary hearing.  Appellate courts had interpreted this language to mean that an appellate decision was part of the record of conviction admissible in post-trial evidentiary proceedings under section 1170.95.  (See, e.g., *People v. Williams* (2020) 57 Cal.App.5th 652, 661-663 [holding that the trial court could consider an appellate court's fact summaries in an opinion in the context of 1170.95 hearings because those summaries were "reliable hearsay"].)  Based on the version of section 1170.95 (and the case law interpreting it) in effect at the time of the evidentiary hearing, it is understandable that the trial court considered this court's prior appellate opinion when deciding whether Ignacio was eligible for relief under section 1170.95.

The outstanding question is whether the revised section 1170.95, subdivision (d)(3), permits a trial court, as it did here, to consider a factual summary and the fact conclusion from an appellate court opinion at an evidentiary hearing.  Section 1170.95, subdivision (d)(3), currently provides:  "The admission of evidence in the hearing [to determine whether the petitioner is entitled to relief] shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  *The court may also consider the*

28

*procedural history of the case recited in any prior appellate opinion.* However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3), italics added.)

Ignacio argues, under the amended statute, the trial court's order denying his petition must be reversed because the court relied on this court's fact summary. He asserts the Legislature did not include factual summaries in appellate opinions as admissible evidence in the revised subdivision (d). The Attorney General disagrees, arguing that fact summaries can still be considered by the trial court because they were not expressly excluded from the amended statute and because factual summaries qualify as "additional evidence" under the statute. On this point Ignacio has the better argument.

Resolution of this matter requires us to interpret the revised subdivision (d)(3). "The main goal of statutory interpretation is to effectuate the Legislature's intent." (*People v. Escareno* (2021) 64 Cal.App.5th 595, 601, quoting *People v. Henderson* (2020) 46 Cal.App.5th 533, 545.) "'[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*People v. Bhasin* (2009) 176 Cal.App.4th 461, 469 (*Bhasin*), quoting *People v. Coronado* (1995) 12 Cal.4th 145, 151 (*Coronado*).)

In determining that intent, we first examine the statute's words, applying ""'their usual, ordinary, and common sense meaning based upon the language . . . used and the evident

purpose for which the statute was adopted.""" (*People v. Granderson* (1998) 67 Cal.App.4th 703, 707, quoting *In re Rojas* (1979) 23 Cal.3d 152, 155.)  If no ambiguity in the statute's language exists, the Legislature is presumed to have meant what it said, and the plain meaning controls.  (See *Bhasin, supra*, 176 Cal.App.4th at p. 469 [observing that where the statute is clear, there is no need for construction].)  "But the 'plain meaning' rule also does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. . . . Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute.  The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  If, on the other hand, the words of the statute are ambiguous, a court may resort to "extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Bhasin, supra,* 176 Cal.App.4th at p. 469.)  Applying these rules of statutory interpretation, the reviewing court must select the construction that comports most closely with the Legislature's apparent intent to promote rather than defeat the statute's general purpose and avoid an interpretation that would lead to absurd consequences.  (*Coronado, supra,* 12 Cal.4th at p. 151.)

Based on the plain language of subdivision (d)(3), "the procedural history" contained in a prior appellate opinion may be considered by a trial court at a section 1170.95 evidentiary hearing without limitation.  (§ 1170.95, subd. (d)(3) ["The court may also consider the procedural history of the case recited in any prior appellate opinion."].)  The question of whether a trial

court at a section 1170.95 evidentiary hearing may also consider a "fact summary" or conclusions of fact from a prior appellate opinion is a different matter.

In *Williams,* the appellate court concluded that in originally enacting section 1170.95, subdivision (d)(3), the Legislature gave the trial court "unfettered discretion" to consider "evidence" without any restriction at the subdivision (d)(3) hearing to determine the petitioner's eligibility for resentencing.  (*Williams, supra,* 57 Cal.App.5th at p. 661.)  But, in amending section 1170.95 (d), the Legislature provided a detailed framework for the trial court's admission of evidence during the resentencing hearing and effectively constrained the "unfettered discretion" *Williams* described.

Because the Legislature's treatment of evidentiary restrictions is extensive in SB 775, we find it meaningful that the Legislature omitted any reference to the use of appellate court opinion fact summaries and conclusions of fact in subdivision (d)(3).  We assume the Legislature could have included an additional exception for this evidence if it had intended.  (See *People v. Arias* (2008) 45 Cal.4th 169, 180 ["if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage"].)  But it did not.  Under the doctrine of expressio unius est exclusio alterius, "[t]he expression of some things in a statute necessarily means the exclusion of other things not expressed,"[22] the explicit allowance for the consideration of the procedural history implies that factual

---

[22]     *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1105.

summaries in appellate opinions should not be considered in section 1170.95 evidentiary hearings. (See *Harden, supra,* 76 Cal.App.5th at pp. 272-273 [acknowledging the distinction between the use of fact summaries permitted at the prima facie stage of section 1170.95 proceedings but not at the evidentiary hearing stage].)

We therefore agree with Ignacio that if the Legislature had intended to permit trial courts to consider anything other than the procedural history of the case recited in a prior appellate opinion, the drafters would have used general and broad language such as "the court may consider any prior appellate opinion" in evaluating the section 1170.95 petition. To construe the amended subdivision (d)(3) to permit consideration of the entire appellate opinion would render surplusage the language "the procedural history of the case." It is a familiar rule of statutory interpretation that every word, phrase, and provision in a statute must be given meaning and effect and that "[a] construction making some words surplusage is to be avoided." (*Lee v. Amazon.com, Inc.,* (2022) 76 Cal.App.5th 200, 235, quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) Consequently, the rules of statutory construction support the conclusion that the factual summary and the factual conclusion found in an appellate opinion are not admissible at an evidentiary hearing under section 1170.95, subdivision (d).

Our conclusion is supported by the only published case that has addressed the issue so far, *Clements, supra,* 75 Cal.App.5th at pp. 292-293. In *Clements,* the appellant argued the trial court erred when it found the appellate court's opinion in the direct appeal was part of the record of conviction that

32

could be considered at the section 1170.95 evidentiary hearing. (*Id.* at p. 291.) Although Division Two of the Fourth Appellate District in *Clement*s found that the petitioner had failed to demonstrate the trial court had used the appellate court's opinion in denying the section 1170.95 petition, the *Clements* Court also acknowledged that "fact summaries" from appellate court opinions should no longer be relied upon at the evidentiary stage of a section 1170.95 proceeding. (*Id.* at p. 292 ["However, effective January 1, 2022, the Legislature limited use of prior appellate opinions, allowing trial judges to "consider the procedural history of the case recited. [Citation.]" The "specificity indicates the Legislature has decided trial judges *should not* rely on the factual summaries contained in prior appellate decisions when a section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing." (Italics added.)].) We agree with the court's conclusion in *Clements*—fact summaries and factual conclusions from appellate court opinions should not be used by the trial court during the evidentiary hearing to determine the merits of a section 1170.95 petition.[23]

---

[23]	Even characterizing the appellate court's factual summary as "additional evidence" under subdivision (d)(3), as the Attorney General suggests, would not necessarily render it admissible. Under subdivision (d)(3), the prosecutor must establish that all additional and new evidence presented at the evidentiary hearing is admissible under the rules of evidence. (See § 1170.95, subd. (d)(3) ["The admission of evidence in the [evidentiary] hearing [to determine whether the petitioner is entitled to relief] shall be governed by the Evidence Code."].) Even if section 1170.95, subdivision (3)(d), is interpreted to permit the trial court to consider factual summaries or conclusions of fact in a court of appeal opinions at a section

Even if we interpreted revised section 1170.95, subdivision (d)(3), to permit the trial court to consider the fact summary from the appellate opinion, we would still reverse. The probative value of the prior appellate opinion in a section 1170.95 evidentiary hearing is limited by what the appellate court considered and decided. (See *People v. Woodell (*1998) 17 Cal.4th 448, 457 [observing whether and to what extent an opinion is probative depends on the matters at issue in the direct appeal].) As the *Clements* Court reflected, "[i]t's easy to conceive of a case where the issues on appeal implicate different facts than a later resentencing petition." (*Clements, supra,* 75 Cal.App.5th at p. 292.) The original appellate decision in such a case may focus on facts not relevant to a later petition challenging the murder conviction. (See, e.g., *People v. Langi* (2022) 73 Cal.App.5th 972, 980 ["Despite the statement in our prior opinion that appellant threw the punch leading to the victim's death, for which the record does include evidence, the record as a whole leaves room to question that conclusion. . . . That question was not critical to the resolution of the appeal; the critical question was whether it was reasonably likely that [the] improperly excluded testimony would have led to a different outcome at trial"].)

---

1170.95 evidentiary hearing, the presentation of those summaries as additional evidence must comply with the rules of evidence, including the rules governing the admission of hearsay. Further, had the Legislature intended factual summaries in appellate opinions to be included in the category of "additional evidence" there would have been no reason for the Legislature to singularly clarify that the trial court may consider "the procedural history" of those appellate opinions.

Here, the conclusions in the February 2000 appellate opinion provide minimal probative support for the trial court's evidentiary findings at the section 1170.95 evidentiary hearing.

As reflected in the appellate opinion in the direct appeal, this court's analysis and factual conclusions focused not on the evidence supporting the direct aider and abettor theory of murder, but instead centered on whether sufficient evidence supported a now invalid theory of murder under the natural and probable consequences doctrine. The opinion also related to the facts and behavior of multiple defendants, not just Ignacio. In addition, the probative value of this court's prior factual conclusions and its fact summary is further diminished because in reviewing the trial evidence, this court did not have the benefit of the new evidence provided by Ortiz at the section 1170.95 evidentiary hearing.

> 5. *The Trial Court's Reliance on the Factual Summary and Analysis in the Opinion from the Direct Appeal Was Not Harmless*

Based on the transcript of the February 10, 2021 evidentiary hearing and the February 25, 2021 hearing during which the trial court "clarified" its decision on the record, it is clear that in acting as the fact-finder, the trial court relied heavily, if not exclusively, on this court's prior factual summary and factual conclusions. The trial court used the opinion in the direct appeal as a basis to reject Ortiz's competing version of events and conclude that Ortiz's evidence lacked credibility. Moreover, although the trial court admitted Detective Harris's testimony relating to Alcala's statement, it appears the court did not rely on it. In fact, in his opening brief, the Attorney General acknowledged "[i]n denying the petition, the court did not rely on

Harris's testimony regarding Alcala's prior identification." Because there is no evidence the trial court was provided with the transcripts from the trial, it appears all the evidence the court relied upon to conclude that Ignacio was a direct aider and abettor was gleaned from the appellate opinion in the direct appeal.

We also conclude that absent the evidence supplied by the appellate opinion, Ignacio would probably have achieved a better result at the evidentiary hearing. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)[24] Specifically, the admission of Detective Harris's testimony, which involved multiple layers of hearsay, was problematic. A review of the transcript from the trial reveals that Detective Harris's testimony relating to Alcala's identification of Ignacio involved double hearsay. Detective Harris's testimony at the section 1170.95 hearing derived from the police report that contained Alcala's out of court statement to Detective Harris's partner, Detective Kaona. No effort was made at the section 1170.95 evidentiary hearing to establish an exception for both layers of hearsay.

Also, Detective Harris's testimony at the section 1170.95 hearing differed from Alcala's testimony at trial. Detective Harris claimed Alcala told Detective Kaona that "two people ran

---

[24] The right to a post-conviction proceeding for possible resentencing pursuant to section 1170.95 is a creation of state law. We evaluate nonstructural state law error under the harmlessness standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195.) The *Watson* standard requires us to evaluate whether the petitioner has demonstrated it is ""reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."" (*Ibid*.)

to the . . . Regal and then obtained something and returned back and helped his other homeboys in the fight against [Boissiere]." However, at trial Alcala never testified that the two people obtained something from the car. Rather, he testified Ignacio and one of his co-defendants went to the car, one of them opened the passenger door, went inside the car and then they returned to the fight. Alcala assumed they were looking for something in the car, but Alcala did not state he saw them take anything from the car. We conclude Harris's testimony relating to Acala's statement was not admissible based on the hearsay exception for prior consistent statements (Evidence Code section 1236) that the Attorney General argues on appeal.

Likewise, the evidence did not satisfy the elements of the hearsay exception the prosecutor argued at the section 1170.95 hearing—Evidence Code section 1238, evidence of a prior identification. We agree with Ignacio that the prosecutor did not lay a complete foundation for the statement's admission under section 1238, which requires, as a foundational element, the witness confirms the identification and affirms its integrity at the time it was made. (See Evid. Code, § 1238, subd. (c) ["The evidence of the statement is offered after the witness testifies that he made the identification and that it was a true reflection of his opinion at that time."].) At the section 1170.95 evidentiary hearing, the prosecutor did not provide evidence Alcala ever confirmed the truthfulness of that statement at the time it was made as required under subdivision (c) of Evidence Code section 1238. As a result, Detective Harris's evidence could not have supported the court's denial of Ignacio's petition.

Without Detective Harris's testimony, and without relying on the factual summary and conclusion in the court of appeal's

37

opinion, the prosecution would have needed to present alternative evidence to sustain its burden under section 1170.95 during the evidentiary hearing. [25] It is therefore reasonably probable that a result more favorable to Ignacio would have been reached had the trial court not considered the inadmissible evidence offered by the prosecution below.  Accordingly, we reverse the order denying the petition and remand the matter to the trial court for a new section 1170.95 evidentiary hearing.  During oral argument on this appeal, both counsel asserted and we agree, that at the new hearing, the court should allow the parties, if they choose, to present additional evidence consistent with the standards governing the admission of evidence in section 1170.95, subdivision (d)(3).

---

[25]      We decline to speculate as to the other evidence the prosecutor might have offered in lieu of this court's opinion.  The revised section 1170, subdivision (d)(3), anticipates evidence presented during the evidentiary hearing may include "evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1170.95, subd. (d)(3).)  It is not the role of this court to engage in conjecture as to what evidence might have been introduced by the prosecution or how that evidence may have been considered by the trial court; this evaluation process, in the first instance, does not belong to this court but rather is committed to the trial court as the independent fact finder on the petition.

## DISPOSITION

The order denying Ignacio's petition for resentencing is reversed. The matter is remanded for a new evidentiary hearing applying the standards of proof and evidentiary rules in the current version of Penal Code Section 1170.95, subdivision (d)(3).


WISE, J.[*]


We concur:


PERLUSS, P. J.


FEUER, J.

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.